25-859-cv
*Harris v. LAZ Parking*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 30th day of April, two thousand twenty-six.

PRESENT:
>JOHN M. WALKER, JR.,
>BARRINGTON D. PARKER,
>JOSEPH F. BIANCO,
>    *Circuit Judges*.

———————————————————————

AMY HARRIS, individually and on behalf of all others similarly situated,

>    *Plaintiff-Appellant*,

>    v.                                                             No. 25-859-cv

LAZ PARKING LTD, LLC,
LAZ KARP ASSOCIATES, LLC,

>    *Defendants-Appellees*.

———————————————————————

FOR PLAINTIFF-APPELLANT:                DANE C. MARTIN, (Bryant T. Lamer, *on the brief*) Spencer Fane LLP, Kansas City, MO; William E. Bloss, Koskoff Koskoff & Bieder, P.C., Bridgeport, CT

FOR DEFENDANTS-APPELLEES:                JAMES T. SHEARIN, (Thomas S. Lambert, *on the brief*), Pullman &

Comley, LLC, Bridgeport, CT; Christopher B. Weldon, Brian J. Palmeri, Winget, Spadafora & Schwartzberg, LLP, Stamford, CT

Appeal from a judgment of the United States District Court for the District of Connecticut (Nagala, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court, entered on March 10, 2025, is **AFFIRMED**.

Plaintiff-Appellant Amy Harris appeals from a judgment of the district court dismissing her claims against Defendants-Appellees, LAZ Parking Ltd, LLC and LAZ Karp Associates, LLC (collectively, "LAZ"). LAZ is one of the nation's largest privately-owned parking companies. On December 21, 2022, Harris parked in a LAZ lot where posted signage (the "Parking Sign") advertised a rate of $6.00 for four hours of parking. When Harris paid for her parking session using LAZ's online payment system, the system reflected that she would be charged a $0.37 "Service Fee," which was not disclosed on the Parking Sign.

Harris brings this action on behalf of herself and a putative class of individuals, alleging that LAZ's imposition of the Service Fee constituted a breach of contract, a breach of LAZ's Terms and Conditions, a violation of the Connecticut Unfair Trade Practices Act ("CUTPA") and the Missouri Merchandising Practices Act ("MMPA"), and a civil conspiracy. The district court granted Defendants-Appellees' motion to dismiss the Amended Complaint in its entirety, for failure to state a claim upon which relief could be granted. *See* Fed. R. Civ. P. 12(b)(6). This appeal followed.

We review the grant of a motion to dismiss *de novo*, accepting all factual allegations in the Amended Complaint as true. *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60,

2

65 (2d Cir. 2012). We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal. For the reasons explained below, we **AFFIRM** the judgement of the district court.

## I.      Claim I (Breach of Contract)

Harris alleges that LAZ breached its contract by "imposing an extra 'Service Fee,'" causing her to pay $6.37, which was $0.37 more than she expected based on the $6.00 rate posted on the Parking Sign. The Parking Sign, Harris claims, was an offer which invited acceptance by parking. Under this theory, the act of parking constitutes assent to the offer's terms, and the act of paying via the online payment system is performance. Under the facts of this case, her theory fails.

"To form a valid and binding contract in Connecticut, there must be a mutual understanding of the terms that are definite and certain between the parties. . . . To constitute an offer and acceptance sufficient to create an enforceable contract, each must be found to have been based on an identical understanding by the parties. . . ." *Duplissie v. Devino*, 902 A.2d 30, 42 (Conn. App. Ct. 2006). To establish a meeting of the minds, parties need not agree on all terms before a court will regard their agreement as an enforceable contract, but they must agree on *essential* terms. *See Int'l Bldg. Supply, LLC v. Hudson MMPMeridian Constr. Grp., LLC*, No. 3:22-CV-01167 (TOF), 2025 WL 1726365, at *9 (D. Conn. June 21, 2025) (citing *Glazer v. Dress Barn, Inc.*, 873 A.2d 929, 942 (Conn. 2005)). Essential terms are those "without which a party would not have entered into an agreement." *Squillante v. Cap. Region Dev. Auth.*, 266 A.3d 940, 950 (Conn. App. Ct. 2021). "[T]here is no bright line rule describing the essential elements of . . . enforceable contracts." *111 Whitney Ave., Inc. v. Comm'r of Mental Retardation*, 802 A.2d 117, 123 (Conn. App. Ct. 2002). Thus, "[w]hether a term is essential turns on the particular

3

circumstances of each case." *Id.* (internal quotation marks omitted).

Harris has failed to plead the existence of an enforceable contract because she has not pled that the parties agreed on essential terms. The Parking Sign lacked a final price, final parking session duration, and a method of payment. There was only one method of payment available at the lot so Harris cannot plausibly allege that LAZ would have entered into the agreement without establishing the method of payment. Moreover, because the price was contingent on the duration of Harris's stay—a detail that depended on Harris's subjective intent—the price could not be ascertained merely from the Parking Sign and Harris's decision to park. *See Conn. Light & Power Co. v. Proctor*, 152 A.3d 470, 483 (Conn. 2016) (Connecticut follows "the objective theory of contracts," where the "making of a contract does not depend upon the secret intention of a party") (internal citation and quotation marks omitted). Therefore, because these essential terms were not agreed upon, no contract was formed merely by Harris's act of parking. Accordingly, we affirm the district court's dismissal of Claim I.

## II.      Claim II (Breach of the Terms and Conditions)

In the alternative to Claim I, Harris alleges that LAZ is liable for breach of the Terms and Conditions because LAZ "promised they would not charge . . . a service fee for services provided" but did so anyway. J. App'x at 24. This argument also fails because the promise not to charge fees does not apply to the system Harris used to pay for parking.

Review of the Terms and Conditions makes clear that LAZ's statement that "in providing the Service, [it] does not . . . charge . . . for any parking fees or services provided[,]" applies only to the provision of "the Service," and the payment system Harris used to pay for parking is not part of "the Service." *Id.* at 96. "The Service" is "the System and the services, products and networks found at or related to the System." *Id.* at 95. "The System" is the "LAZ online parking

4

reservation system." *Id.* The Service, which LAZ provides "pursuant to the System," "is limited to: informing users of the location and potential availability of parking spots." *Id.* Thus, under the plain language of the Terms and Conditions, the promise not to charge fees does not apply to the system Harris used to pay for parking because the Terms and Conditions' "System" is "limited to" providing information about parking spots, and has nothing to do with payment. Accordingly, the judgment of the district court as to Claim II is affirmed.

## III.    Claim III (Violation of CUTPA)

Harris alleges that by charging the Service Fee, LAZ violated CUTPA's general prohibition against "unfair or deceptive acts," *see* Conn. Gen. Stat. Ann. § 42-110b, and CUTPA's specific per se rule against impositions of a "surcharge on any transaction," Conn. Gen. Stat. Ann. § 42-133ff(b). Assuming, but not deciding that CUTPA applies extraterritorially, Harris has not alleged a CUTPA violation on either ground.

On the first ground, we conclude that the Service Fee was not "unfair or deceptive" as a matter of law. LAZ fully disclosed the Service Fee to Harris before she paid for her parking. Where "the defendant had availed itself of the rights afforded under the plain and unambiguous terms of the agreement, none of which was hidden or otherwise withheld from the plaintiff," the plaintiff's CUTPA claim "fail[s] as a matter of law." *Ramirez v. Health Net of Ne., Inc.*, 938 A.2d 576, 591 (Conn. 2008).

As for the per se rule, Harris has not alleged that LAZ imposed "any additional charge or fee that increase[d] the total amount of" the parking "transaction *for the privilege of using a particular method of payment*." Conn. Gen. Stat. Ann. § 42-133ff(a)(6) (emphasis added) (defining a "surcharge" as "any additional charge or fee that increases the total amount of a

transaction for the privilege of using a particular method of payment"). Accordingly, the judgment of the district court as to Claim III is affirmed.

## IV. Claim IV (Violation of the MMPA)

Harris alleges that LAZ violated the MMPA by charging the Service Fee. The MMPA creates a claim for damages for "[a]ny person who purchases . . . merchandise primarily for personal, family, or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment by another person" of an unlawful practice. Mo. Rev. Stat. § 407.025.1(1). An unlawful practice includes "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, [or] unfair practice . . . in connection with the sale or advertisement of any merchandise in trade or commerce." *In re Folgers Coffee Mktg.*, 159 F.4th 1151, 1155 (8th Cir. 2025) (quoting Mo. Rev. Stat § 407.020.1).

We conclude that Harris has failed to state a claim for a violation of the MMPA, for the same reason she failed to establish a violation of CUTPA's prohibition against unfair or deceptive acts. Prior to paying, Harris knew the cost would be $0.37 more than she anticipated. In light of this notification and Harris's ability to leave and park elsewhere, LAZ's imposition of a Service Fee was not unlawful under the MMPA. Accordingly, the district court's judgment as to this claim is affirmed.

## V. Claim V (Civil Conspiracy)

There is "no independent claim of civil conspiracy" under Connecticut law and "to state a cause of action, a claim of civil conspiracy must be joined with an allegation of a substantive tort." *Harp v. King*, 835 A.2d 953, 972 n.37 (Conn. 2003). Because we affirm the dismissal of Harris's

CUTPA and MMPA claims, there is no substantive tort allegation upon which Harris's civil conspiracy claim can rest, and the judgment of the district court as to Claim V is affirmed.

*    *    *

We have considered the parties' remaining arguments and find them to be without merit. For the foregoing reasons, the March 10, 2025 judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court